69322. BILLINGS COTTONSEED, INC. v. ALBANY OIL MILL, INC.
(328 SE2d 426)

McMURRAY, Presiding Judge.

Plaintiff-appellant Billings Cottonseed, Inc. (Billings) and defendant-appellee Albany Oil Mill, Inc. (Albany), a cooperative corporation of cotton ginners, entered into an agreement on October 6, 1983, under the terms of which Albany was to sell to Billings whole cottonseed for distribution as cattlefeed to dairy farmers in an amount "sufficient to meet all reasonable requirements of Billings, at a price to be mutually determined from time to time by the parties . . . Billings [agreed] to purchase from Albany, seed which, from time to time, it reasonably [required], at a price to be mutually determined from time to time by the parties . . . ." The agreement further provided that "Billings shall have the exclusive right to dispose of all seed accepted by Albany [i.e., seed purchased by Albany from third parties] that ends up as cattlefeed, or that is not crushed by Albany"; that with respect to any seed accepted by Albany, "said seed must be either crushed by Albany or sold through Billings for delivery to cattle farmers, or if sold to farmers, it must be through Billings"; and that if the seed was not to be sold to Billings, Albany was to pay Billings one-half of the profits, up to a stated maximum, realized from the crushing of the seed after the October, November and December crushing season. The agreement did not prohibit Billings from acquiring seed from other suppliers and, in fact, between September 1983 and January 1984 Billings did purchase over 1,800 tons of whole cottonseed from four suppliers other than Albany. Due to adverse market prices, on December 22, 1983, Albany wrote Billings offering to sell 9,800 tons of cottonseed at $267 per ton, a price higher than previously agreed upon by the parties, and also requiring a per ton deposit and

payment upon delivery on a C.O.D. basis.

Billings filed suit for injunctive relief and specific performance, alleging that Albany had breached the agreement by failing to supply Billings' reasonable requirements; that the price demanded by Albany for the cottonseed offered was unreasonable; and that the deposit demanded by Albany had not been contemplated by the parties. Subsequently Billings amended its complaint, asserting the same grounds for breach of the agreement and alleging an additional breach arising out of Albany's refusal to give Billings one-half of the profits it realized from crushing seed after January of 1984. The restated complaint sought damages arising from these two breaches. Albany raised several defenses in response, including the contentions that the agreement was unenforceable (1) for want of mutuality; (2) for lack of consideration flowing to Albany; (3) for failure of a condition precedent, there being no agreed upon price; and (4) because the agreement was unconscionable. After extensive discovery proceedings Albany filed a motion for summary judgment, which was granted, the trial court finding after review of all relevant materials that there was no genuine issue of material fact and the agreement was unenforceable as a matter of law. Billings appeals from this judgment. *Held*:

1. Although numerous issues have been raised and discussed by the parties, the dispositive issue of this appeal is whether the agreement in question constituted a valid "requirements" contract as contemplated by the Uniform Commercial Code (OCGA § 11-2-306). We conclude that it does not fall under the definition of the Georgia "requirements" statute which, as adopted without variation from the Uniform Code, must be in accord with the law of other jurisdictions.

"It is elementary that a requirements contract is one in which the buyer 'expressly or implicitly promises he will obtain his goods or services from the [seller] *exclusively*. [Cits.]" *Harvey v. Fearless Farris Wholesale*, 589 F2d 451, 461 (9th Cir. 1979). A true requirements contract obligates the buyer to purchase exclusively from the seller all the goods needed for a particular use contemplated by the parties: "In the absence of such a promise, or some other form of consideration flowing from the buyer to the seller, the requisite mutuality and consideration for a requirements contract is absent. [Cits.] The promise of the seller becomes merely an invitation for orders and a contract is not consummated until an order for a specific amount is made by the buyer. [Cits.]" *Propane Industrial v. Gen. Motors Corp.*, 429 FSupp. 214, 219 (W.D. Mo. 1977).

The agreement in the *Propane* case, which stated that it was to cover a "*possible* requirement" on an "*as required*" basis, was held not to be an express or implied promise that the buyer would purchase all his requirements from the seller, and thus did not create a requirements contract. Ibid. at 219-220. "It is equally clear that the

words, 'may order from time to time,' standing alone, are not a promise by the [buyer] to purchase anything from the [seller], much less its requirements. [Cits.]" *Intl. Environmental Corp. v. Intl. Telephone &c. Corp.*, 397 FSupp. 253, 255 (W.D. Okla. 1975). Likewise, when the agreement gives the buyer the right to determine how and when it may purchase from the seller, and the buyer admits occasions when it did not purchase exclusively from the seller, "the relationship is a one-way street" and the contract is unenforceable. *Dixie Oil Co. of Ala. v. Texas City Refining*, 362 FSupp. 733, 734 (S.D. Miss. 1973). Nor do successive deliveries of goods constitute a requirements contract where the buyer "did not consider himself bound in any way to order his supplies from" or "to deal exclusively with" the seller. *Loizeaux Bldrs. Supply Co. v. Donald B. Ludwig Co.*, 366 A2d 721, 724 (1) (N.J. Super. 1976). See generally 2 Anderson, Uniform Commercial Code, §§ 2-306:9 — 2-306:12 (3d ed. 1982).

Examining the instant agreement under the rule of these authorities, it is clear that while Albany, the seller, is required thereunder to supply "seed sufficient to meet all reasonable requirements of Billings," the buyer, the only promise expressed by Billings in the document was to purchase "seed which, from time to time, it reasonably requires." Thus, while Albany agreed to furnish *all* of Billings' requirements, there is no promise, express or implied, by Billings to purchase its requirements exclusively from Albany and it was admitted that purchases had been made from others. Consequently, this was not a valid requirements contract as contemplated under the Uniform Commercial Code.

2. Appellant's argument that a valid requirements contract was established by partial performance on its part is also without merit. Ordinarily, partial performance renders enforceable a contract unenforceable for lack of consideration and mutuality by supplying the lack of mutuality. See *Hill Aircraft &c. Corp. v. Planes, Inc.*, 158 Ga. App. 151 (2) (279 SE2d 250) (1981); *Venable v. Block*, 138 Ga. App. 215, 217 (2) (225 SE2d 755) (1976). There can be no partial performance in the context of a requirements contract, however, for it is the promise of exclusivity that provides the consideration to the seller. *Harvey v. Fearless Farris Wholesale, Inc.*, supra. The promise to buy alone is not sufficient performance, for without exclusivity the purchaser's promise is merely to buy when he wants and the promise of the seller becomes merely an invitation for orders. *Propane Industrial v. Gen. Motors Corp.*, supra. Thus, the requisite mutuality is not supplied.

3. Nor was an "open price term contract" created under OCGA § 11-2-305 (4), which provides that where "the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract . . . ." When Albany fixed the reasonable price at

$267 per ton of cottonseed on December 22, 1983, and Billings rejected it, there was no valid, enforceable contract. Compare *Robinson v. Stevens Indus. Inc.*, 162 Ga. App. 132 (290 SE2d 336) (1982).

4. Finally, it is clear that if the agreement in controversy is not valid or enforceable under the Uniform Commercial Code, neither does it satisfy the requirements of the common law of contracts in this State. "A consideration is essential to a contract which the law will enforce. An executory contract without such consideration is called nudum pactum or a naked promise." OCGA § 13-3-40 (a). Moreover, "an alleged contract on which there is no firm agreement as to consideration is unenforceable. [Cits.]" *Venable v. Block*, 138 Ga. App. 215, 216, supra. Thus, where there is no agreement "in specific detail" in regard to the quantity of the goods to be purchased, or the terms and amount of credit, such a contract is too indefinite to be capable of enforcement. *Wedgewood Carpet Mills v. Color-Set, Inc.*, 149 Ga. App. 417, 420 (2) (254 SE2d 421) (1979), and cases cited. Furthermore, when nothing in the purported agreement amounts to an obligation on the buyer's part to purchase any quantity beyond that already purchased, the purported agreement is unilateral and unenforceable for want of mutuality as to any unperformed portion thereof. *Wedgewood Carpet Mills v. Color-Set, Inc.*, supra. See also *Chappell v. F. A. D. Andrea, Inc.*, 41 Ga. App. 413 (153 SE 218) (1930). Since the terms of the Billings-Albany agreement did not specify an amount limiting the buyer's reasonable requirements, and Billings had no obligation imposed thereunder to purchase from Albany, there was no consideration for Albany's promise to sell Billings its reasonable requirements.

5. " 'The purpose of the Summary Judgment Act . . . is to eliminate the necessity for a trial by jury where, giving the opposite party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.' [Cit.] . . . If the terms used in a contract are plain, unambiguous, and capable of only one reasonable interpretation, then they must be given their ordinary significance. [Cits.] . . . The construction of a contract is a matter of law for the court, [cit.], as is the determination *vel non* of ambiguity in a contract. [Cit.] Where the language of a contract is plain and unambiguous, however, as we find it to be in the instant case, no construction is required or even permissible. [Cits.]" *Jones v. Barnes*, 170 Ga. App. 762, 764-765 (318 SE2d 164) (1984). "In any event, where the terms of a contract are unambiguous on their face as they were here, parol evidence may not be used to explain their intent and meaning. [Cit.]" *Boling v. Golden Arch Realty Corp.*, 242 Ga. 3, 4 (247 SE2d 744) (1978). It follows that the trial court correctly refused to consider the extraneous evidence

advanced by appellant, including testimony as to prior business conduct of non-party entities, and that the grant of summary judgment to appellee on grounds of the unenforceability of the contract was not erroneous for any reason assigned.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED MARCH 13, 1985.

*Jerome L. Kaplan, James P. Smith*, for appellant.
*Hilliard P. Burt, Harry L. Wingate, Jr.*, for appellee.